FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 17, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA V.,[1]

               Plaintiff,

      v.

ANDREW M. SAUL, the Commissioner
of Social Security,

              Defendant.

No.    4:20-CV-5040-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2]
Plaintiff Sandra V. appeals the denial of benefits by the Administrative Law Judge
(ALJ). She alleges the ALJ erred by 1) failing to properly assess whether Plaintiff
met or equaled a listing, 2) discounting Plaintiff's symptom reports, 3) failing to
properly consider lay statements from her sister, and 4) improperly assessing her

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by
first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 17 & 19.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 17, and grants the Commissioner's Motion for Summary Judgment, ECF No. 19.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

1

2

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

3

4

5

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

6

7

## II.    Factual and Procedural Summary

8

9

10

Plaintiff filed Title II and XVI applications, alleging an amended disability onset date of August 10, 2015.[18] Her claims were denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Marie Palachuck.[20]

11

In denying Plaintiff's disability claims, the ALJ made the following findings:

12

13

14

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

15

16

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

17

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

18

[17] *Id.*

19

20

[18] AR 246-52 & 254-64. *See also* AR 66 (amending disability onset date to August 10, 2015).

21

[19] AR 144-49 & 152-61.

22

[20] AR 41-72.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Plaintiff met the insured status requirements through December 31, 2016;

- Step one: Plaintiff had not engaged in substantial gainful activity since July 1, 2011[21];

- Step two: Plaintiff had the following medically determinable severe impairments: post-polio myelitis, left lower extremity; chronic back pain; obesity (BMI 33-36); depressive disorder; and anxiety disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

  She can only stand and walk up to 2 hours in and [sic] eight hour workday. Postural activities can be performed on an occasional basis, except she can rarely climb stairs and never climb ladders, ropes, or scaffolds. Further, [Plaintiff] would need to avoid all exposure to hazards and walking on uneven ground. From a psychological perspective, [Plaintiff] is able to understand, remember, and carry out simple, routine repetitive tasks and instructions. She is able to maintain concentration, persistence, and pace on those tasks for 2-hour intervals between regularly scheduled breaks. She should be in a predictable environment with seldom change and no fast-paced production rate of work. Interaction with the public and co-workers should be limited to superficial, which was defined as non-collaborative with no tandem tasks.

---

[21] Although Plaintiff amended her disability onset date at the hearing, the ALJ's decision did not reflect the amended disability onset date. AR 66, 21, & 23.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as garment sorter, mail clerk, and final assembler.[22]

When assessing the medical-opinion evidence, the ALJ gave:

- significant weight to the testifying opinions of John Morse, M.D. and Marian Martin, Ph.D.;

- some weight to the treating opinion of Samantha Price, DPM and the reviewing opinions of John Gilbert, Ph.D. and Stacy Koutrakos, Psy.D.; and

- little to some weight to the reviewing opinions of Donna LaVallie, D.O. and Gordan Hale, M.D.[23]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were

---

[22] AR 15-40

[23] AR 30-32.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

not entirely consistent with the medical evidence and other evidence in the record.[24] Likewise, the ALJ discounted the lay statement from Plaintiff's sister.[25]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[24] AR 27-28.

[25] AR 32.

[26] AR 1-8.

[27] 42 U.S.C. § 405(g).

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[29] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30] The Court considers the entire record as a whole.[31]

3

4

5

6

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

7

### IV.    Analysis

8

9

**A.    Step Three (Listings): Plaintiff fails to establish error.**

10

Plaintiff contends the ALJ erred by 1) finding that Plaintiff's impairments did not meet Listings 1.04 and 11.11, and 2) failing to consider, beyond a

11

12

13

14

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

15

16

17

18

19

[31] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

20

[32] *Molina*, 674 F.3d at 1111.

21

22

[33] *Id.* at 1115 (quotation and citation omitted).

23

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

boilerplate finding, whether Plaintiff's impairments met or medically equaled

Listing 1.02A.

If a claimant meets all of the listing criteria, she is considered disabled at

step-three. A claimant who does not meet all of the listing criteria may still be

considered disabled at step-three if her impairment(s) medically equal a listed

impairment.[35] Medical equivalence can be established three ways, one of which is:

> If an individual has an impairment that is described in the listings,
> but either:
>
>   a.  the individual does not exhibit one or more of the findings
>       specified in the particular listing, or
>   b.  the individual exhibits all of the findings, but one or more of the
>       findings is not as severe as specified in the particular listing,
>
> then we will find that his or her impairment is medically equivalent to
> that listing if there are other findings related to the impairment that
> are at least of equal medical significance to the required criteria.[36]

The ALJ is obligated to consider the relevant evidence to determine whether

a claimant's impairment(s) meet or equal one of the specified impairments set forth

in the listings.[37] Generally, a "boilerplate finding is insufficient to support a

---

[35] Soc. Sec. Ruling 17-2p.

[36] *Id.*

[37] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

conclusion that a claimant's impairment does not [meet or equal a listing]."[38]  The Ninth Circuit has recognized, however, that the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[39] Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[40]

1.    Listing 1.04A

To meet Listing 1.04A, a claimant must establish 1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, 2) spine-motion limitation, 3) atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss, and 4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[41] Here, the ALJ found

---

[38] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

[39] *Lewis,* 236 F.3d at 513.

[40] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

[41] *Gnibus v. Berryhill,* 2017 WL 977594, at *4 (E. D. Cal. March 13, 2017) (finding Listing 1.04A was met) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff's low back pain did not meet or equal Listing 1.04A because Plaintiff's spinal condition did not result in compromise of a nerve root or of the spinal cord accompanied by sensory or reflex loss and positive straight-leg raising test.[42] Plaintiff argues, without pertinent citations to the record, that the ALJ erred.[43] Plaintiff fails to present evidence revealing that her spinal condition resulted in compromise of a nerve root or the spinal cord accompanied by sensory or reflex loss, or spinal arachnoiditis, or spinal stenosis.[44] There is no proven error by the ALJ.

---

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")).

[42] AR 24.

[43] Plaintiff—not the Court—must flesh out and support her arguments with law and facts. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

[44] *See, e.g.*, AR 365 (noting normal straight leg raising test and exhibiting normal range of motion of the back); AR 740, 744, & 777 (noting although positive straight leg raise on the left for ipsilateral and decreased range of lumbar back motion, the

1

2

    2.   <u>Listing 11.11</u>

Listing 11.11 applies to post-polio syndrome and is characterized by either:

- disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities; or

- unintelligible speech; or

- bulbar and neuromuscular dysfunction resulting in respiratory or nutritional failures; or

- marked limitation in physical functioning and in one of the non-exertional categories.[45]

Here, the ALJ found Plaintiff's post-polio myelitis did not meet or equal Listing 11.11 because the record did not demonstrate satisfaction of one of the above categories.[46] Plaintiff argues the ALJ erred in reaching this finding. However, a review of the medical record indicates that the ALJ's finding that Plaintiff did not meet or medically equal the requirements of one of the Listing 11.11 categories—namely, disorganization of motor function in *two* extremities that resulted in an

---

contralateral was negative on the left and the right straight leg raises were negative).

[45] 20 C.F.R. pt. 404, Subpt. P., app. 1, § 11.11.

[46] AR 24.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

extreme limitation in one of the identified abilities—is a rational finding supported by substantial evidence.

      3.    <u>Listing 1.02A</u>

     Listing 1.02A is 1) "[c]haracterized by gross anatomical deformity[47] . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," 2) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints," and 3) "[i]nvolvement of one major peripheral weight-bearing joint . . . resulting in inability to ambulate effectively."[48] One is unable to ambulate effectively if she has "impairment(s) that interfere[] very seriously with the individual's ability to independently initiate, sustain, or complete activities."[49] Examples of ineffective ambulation include:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.[50]

---

[47] 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 1.02 (offering the following examples for a gross anatomical deformity: subluxation, contracture, bony or fibrous ankylosis, or instability).

[48] *Id.*

[49] *Id.* § 1.00B2b.

[50] *Id.*

1

2          Here, the ALJ did not articulate specific findings as to the three broad

3   criteria necessary to satisfy Listing 1.04A, instead generally stating she

4   "considered all of the listings" and finding that Plaintiff did "not meet or medically

5   equal the criteria of any listed impairments."[51] A boilerplate listings finding is not

6   per se error if the ALJ otherwise discusses the relevant evidence and makes

7   related findings to permit the Court to assess whether the ALJ's no-listings finding

8   is supported by substantial evidence.

9          Here, although the record reflects that Plaintiff satisfies the first criteria,[52]

10  the Court determines that the ALJ's discussion supports the ALJ's no-listings

11  ─────────────────

12  [51] AR 24.

13  [52] As a result of her post-polio myelitis, Plaintiff has a gross anatomical

14  deformity—contracture—and chronic joint pain and stiffness with signs of

15  limitation of motion or other abnormal motion of the affected knee and ankle joints.

16  *See, e.g.*, AR 28 (ALJ finding contracture in the left knee and the "longitudinal

17  treatment records show that the claimant has experienced . . . . left lower extremity

18  pain and weakness related to post-polio myelitis syndrome."); AR 548

19  ("Extremities: changes left lower extremity from her polio"); AR 549 ("slightly

20  abnormal gait"); AR 550 ("Left lower extremity deformities [d]ue to polio"); AR 587

21  ("She will benefit from skilled physical therapy to address postural and core muscle

22  weakness, in addition to L LE paresis in order to improve gait mechanics and

23  reduce pain"); AR 647 ("Muscle strength of the left leg extensors, 1/5. Left

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

finding. The Court agrees with the Commissioner that the ALJ found that "Plaintiff had not shown an inability to ambulate effectively."[53] In pertinent part, the ALJ stated, "In response to questions posed by the claimant's representative at the hearing, Dr. Morse noted that the claimant has weakness in her left lower extremity; however, he opined she is able to ambulate at the sedentary level as described above."[54] Turning to Dr. Morse's testimony, he opined that Plaintiff could do occasional stairs and should have a "limited exposure, or limited to concentrated exposure to uneven terrain."[55] In arguing that the ALJ found that she was unable to ambulate effectively, Plaintiff focuses on Dr. Morse's subsequent testimony wherein he stated that Plaintiff "should avoid uneven terrain, avoid even moderate exposure to uneven terrain."[56] Plaintiff emphasizes the initial part of this

---

dorsiflexors of the foot 1/5. Left knee with noted contracture. Left ankle with restricted ROM, reducible to 90 degrees/-1 degrees."); AR 657 ("She does appear to have minor LT knee flexion cxr. . .  Explained the purpose of the KAFO to provide stability flexion/extension and M/L stability at the knee and to reduce or prevent further knee flexion contracture."); & AR 648 ("[P]atient does have an ankle joint contracture. . . she has a knee contracture as well.").

[53] ECF No. 19 at 9 (citing AR 24).

[54] AR 30.

[55] AR 48.

[56] AR 50.

statement "avoid uneven terrain"; however, when this statement is read in light of Dr. Morse's entire testimony, there is substantial evidence supporting the ALJ's finding that Dr. Morse opined that Plaintiff was ambulatory, i.e., she could walk on uneven ground for a block at a reasonable pace and she could occasionally climb stairs. That the ALJ crafted an RFC that restricted Plaintiff from walking on uneven ground does not alter the ALJ's finding that Plaintiff was able to ambulate effectively for listings-analysis purposes. The ALJ's ambulation finding is a rational finding supported by substantial evidence considering Dr. Morse's testimony, Samantha Price, DPM's opinion that Plaintiff was likely able to do a sedentary job, the medical observations as to Plaintiff's ambulation, and her use of a brace to improve her ambulation.[57]

Plaintiff fails to establish step-three err.[58]

---

[57] AR 658-69; AR 638 (noting that KAFO brace adjustment and physical therapy would help with gait); and *compare* AR 363 & 365 ("Coordination and gait normal. Tandem, toe, and heel walking is normal"), AR 637, 640, & 647 ("ambulating"), & AR 408 & 417 ("Normal gait"), AR 657 ("She was able to successfully don and ambulate in the KAFO"), *with* AR 549 ("slightly abnormal gait"), AR 587 ("antalgic pattern with ipsilateral trunk lean with L LE stance. Slight circumduction of L LE to advance L LE."), & AR 592 & 607 ("Impaired gait").

[58] Because the Listing 1.02A "inability to ambulate effectively" criteria is not satisfied, the Court need not resolve, under an equivalence analysis, whether

1

2

**B.      Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her

symptom reports. When examining a claimant's symptom reports, the ALJ must

make a two-step inquiry. "First, the ALJ must determine whether there is objective

medical evidence of an underlying impairment which could reasonably be expected

to produce the pain or other symptoms alleged."[59] Second, "[i]f the claimant meets

the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

clear and convincing reasons' for the rejection."[60] Here, the ALJ found Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms inconsistent with the objective findings, her presentation at

appointments, and her high functioning activities of daily activities.[61]

First, as to the ALJ's finding that Plaintiff's symptom reports were

inconsistent with the objective findings, symptom reports cannot be solely

discounted on the grounds that they were not fully corroborated by the objective

_____

medically acceptable imaging of joint space narrowing, bony destruction, or

ankylosis of the affected joints was not needed to satisfy Listing 1.02A.

[59] *Molina*, 674 F.3d at 1112.

[60] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504

F.3d at 1036).

[61] AR 29.

medical evidence.[62] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[63] Here, the ALJ highlighted that the medical records did not show edema or vascular insufficiency of Plaintiff's lower extremities, which was inconsistent with her reported need to elevate her legs twice a day because of swelling in her knees or legs.[64] In June 2017, Plaintiff complained of edema in her feet during a medical appointment, a condition she reported as new and that it was relieved by elevation.[65] However, subsequent

---

[62] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[63] Objective medical evidence means signs, laboratory findings, or both. 20 C.F.R. §§ 404.1502(f), 416.902(k). In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques.

*Id.* §§ 404.1502(g), 416.902(l). Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[64] AR 29 (*see, e.g.*, AR 362, 426, 432, 438, 538, 611, 637, 744, 763, 767, & 777 (no edema or swelling in knees noted)).

[65] AR 738.

medical records did not indicate that edema continued.[66] Accordingly, the ALJ's finding that Plaintiff's complaints of persistent edema for which she would need to raise her legs during the work day were inconsistent with the objective medical findings is rational and supported by substantial evidence.

The ALJ also found that Plaintiff's gait was generally noted as normal or slightly abnormal, which the ALJ found inconsistent with Plaintiff's reported severe difficulties walking due to pain and numbness in her left lower extremity. There was conflicting medical evidence as to Plaintiff's gait, which was sometimes noted as normal and other times noted as impaired.[67]  It is the ALJ's role to weigh conflicting medical evidence and the ALJ's finding that Plaintiff's severe difficulties walking inconsistent with the medical observations and findings is supported by substantial evidence. Moreover, the ALJ highlighted that Plaintiff was fitted for a knee ankle foot orthosis (KAFO) in April 2017, which helped alleviate Plaintiff's

---

[66] *See, e.g.*, AR 758.

[67] *Compare* AR 363 & 365 ("Coordination and gait normal. Tandem, toe, and heel walking is normal"), AR 637, 640, & 647 ("ambulating"), & AR 408 & 417 ("Normal gait"), *with* AR 587 ("antalgic pattern with ipsilateral trunk lean with L LE stance. Slight circumduction of L LE to advance L LE."), AR 592 & 607 ("Impaired gait") AR 549 ("slightly abnormal gait"). *See also* AR 658-59 (Podiatrist's opinion that Plaintiff would have less difficulty with a sedentary job).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

overloading syndrome which had contributed to her gait problems.[68] The ALJ also highlighted that the medical records noted Plaintiff presented in no acute distress, which was contrary to her allegation that she suffers from chronic pain that limits her ability to stand, walk, and sit.[69] The ALJ's rational findings that Plaintiff's reported pain, gait, and edema complaints were inconsistent with the objective findings is supported by substantial evidence and were relevant to the ALJ's assessment of Plaintiff's symptom reports. Yet, the ALJ rationally found that Plaintiff's ability to walk was limited to some extent and limited Plaintiff to sedentary work that did not involve walking on uneven ground.

Second, the ALJ discounted Plaintiff's reported symptoms because they were inconsistent with her presentation at appointments. An ALJ may discount a claimant's symptom reports if the claimant's statements and presentation during medical appointments are inconsistent with statements during the disability

---

[68] AR 28 (citing AR 657 ("She was able to successfully don and ambulate in the KAFO"); *see also* AR 638 (noting that KAFO brace adjustment and physical therapy would help with gait). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

[69] AR 29 (citing AR 538-50, 592-99, & 607-35).

proceeding.[70] Here, the ALJ noted that Plaintiff did not report leg or joint swelling during medical appointments.[71] The ALJ also noted during Plaintiff's monthly pain management visits from 2015 to 2017 she reported her pain and ability to function was controlled by the stable medication regimen.[72] This record provides substantial evidence supporting the ALJ's finding that Plaintiff reported more severe symptoms during the disability process than she presented with at her medical appointments. This was a clear and convincing reason to discount Plaintiff's reported disability symptoms.

Finally, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with her high-functioning activities of daily living.[73] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[74] The ALJ highlighted that

---

[70] *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[71] AR 29 (citing AR 743, 763, 767, & 775).

[72] AR 28 (citing AR 538-40, 546, & 635).

[73] AR 29.

[74] *Molina*, 674 F.3d at 1113.

Plaintiff used her exercise bike, spent time cleaning her house, shopped for groceries and household items, took her children to the park and pool, prepared simple meals, and helped her children get ready for school.[75] The Court need not decide whether Plaintiff's deemed high-functioning activities of daily living constitute a clear and convincing reason to discount Plaintiff's symptoms. The ALJ offered another supported reason for discounting Plaintiff's symptoms—that her presentation at medical appointments was inconsistent with her disability statements—along with the finding that Plaintiff's reported symptoms were inconsistent with the objective findings.[76]

In summary, Plaintiff fails to establish the ALJ erred by discounting her symptom reports.

**C.   Lay Witness: Plaintiff fails to establish error.**

The ALJ discounted Plaintiff's sister's statements[77] because her statements were based on infrequent lay observation of Plaintiff and they were consistent with

---

[75] AR 25-26 & 29-30.

[76] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

[77] AR 290-97.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 22

Plaintiff's own subjective complaints, which were discounted as discussed above.[78] "Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[79] Here, the ALJ's decision to discount the sister's statements is rational and supported by substantial evidence. The sister has lived in a different state than Plaintiff since 2000, visiting her only once a year. That the sister had infrequent interaction and observation of her sister's physical abilities and activities was a germane and specific reason to discount the sister's statements. Moreover, on this record, it was a germane reason to discount the sister's statements for the same reasons the ALJ discounted Plaintiff's reported symptoms.[80]

Plaintiff fails to establish err by the ALJ.

**D.    RFC: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to properly include her reported need to elevate her legs twice a day for thirty minutes at a time and be absent one day or more per month into the RFC. "[T]he ALJ is responsible for translating and

---

[78] AR 32.

[79] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[80] *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). As noted above, the Court is not determining whether the ALJ's proffered high-functioning-activities-of-daily-living reason is supported by substantial evidence.

incorporating clinical findings into a succinct RFC."[81] Plaintiff's RFC argument

merely restates Plaintiff's earlier allegations of error, which are not supported by

the record. Accordingly, the ALJ's hypothetical and RFC properly accounted for the

limitations supported by the record.[82]

**E.    Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 17th  day of March 2021.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

---

[81] *Rounds v. Comm'r Soc. Sec. Adm.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[82] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding it is

proper for the ALJ to limit a hypothetical to those restrictions supported by

substantial evidence in the record).